## WILLIAM SOHIER *vs.* THE MASSACHUSETTS GENERAL HOSPITAL.

A testator devised real estate to his children, " the shares of the daughters being placed in the hands of trustees, to be appointed by their mother, or the judge of probate, in case of her death, and held so that the income shall always be enjoyed by the daughters, respectively, during life, without interference of husbands, if they are married, or liability for debts or engagements, and so also that the principal or trust premises shall, at their decease, go to their issue, if any, otherwise to their heirs at law ; " no appointment of trustees was made pursuant to the devise, but sales of parts of the estate so devised were made from time to time by the devisees, and conveyances thereof given by them in fee simple : Subsequently, trustees were appointed for the daughters, pursuant to the terms of the devise, and, on a petition of the devisees and trustees, the legislature passed a resolve (1847, *c.* 57), confirming the sales and conveyances previously made, as fully as if the testator, being then alive, had executed the same, and appointing an agent to make partition of, and to sell and convey, the remaining portions of the estate : The resolve provided further, that the proceeds of the sales thus authorized to be made should be distributed by the agent, between and among the petitioners, in the proportions, in which, by his will, the testator intended his real estate should be divided among them; and that the shares thereof, which should be paid to the trustees for the daughters, should be held by them, and that they should give bonds to apply the same, upon the trusts and to and for the uses, intents and purposes, in and by the will of the testator declared concerning the same ; but the resolve contained no such provisions relative to the proceeds of the sales made previously to the passing thereof: It was held, that the first part of the resolve, by which the sales and conveyances previously made were confirmed, without making any provision for securing the interests of those, who were entitled in remainder, after the decease of the daughters, was unconstitutional and void; and that the other part thereof, by which an agent was authorized to sell and convey the remaining portions of the estate, and to pay over the proceeds to the trustees, to be held by them upon the trusts, and to and for the uses, intents and purposes of the will, did thereby make provision for securing the interests of those in remainder, and was consequently within the constitutional power of the legislature to pass.

The executrix, under the will above mentioned, having made sales of land, under and by virtue of a license from the probate court, for the payment of debts ; and having neglected to publish notice of her petition for leave to sell, but obtained the assent in writing of all the children of the testator to such sales ; it was held, that the resolve, so far as it confirmed sales so made, by the executrix, was constitutional and valid.

THIS case was submitted to the court upon the following agreed statement of facts : —

Benjamin Joy, late of Boston, deceased, by his will and the codicils thereto, after giving certain annuities, and giving to his widow, Hannah, whom he made sole executrix, power to sell real estate to pay debts and legacies, gave the residue of his estate to his four children, Joseph B., John B., Hannah, and Elizabeth, " the shares of the daughters being placed in the hands of trustees to be appointed by their mother, or the judge of probate in case of her death, and held so that the income shall always be enjoyed by the daughters respectively during life without interference of husbands, if they are married, or liability for debts or engagements, and so also that the principal or trust premises shall at their decease go to their issue, if any, otherwise to their heirs at law." The will and codicils were proved on the 21st of September, 1829.

Hannah Joy, the widow, who was appointed executrix by the will, took out letters testamentary, and sold lands and made conveyances, under and by virtue of a license from the judge of probate to sell for the payment of debts. She published no notice of her petition to the judge of probate for leave to sell, but obtained the assent in writing of all the children to the sale.

Joseph B. Joy died on the 15th of February, 1833, intestate, and without issue, and his fourth part thereby vested in his mother, brother, and two sisters, in equal portions, in fee simple. Hannah Joy, daughter of Benjamin, on the 20th of November, 1833, married Daniel Austin, and, by a marriage settlement, her share of her father's real estate was conveyed by her to John F. Loring and Henry Andrews, in trust, with a power of sale. John B. Joy, on the 5th of January, 1835, married Ellen M. White, and his share of his father's real estate was by a marriage settlement conveyed by him in the same manner to James W. Paige and Amos Cotting, in trust.

Benjamin Joy, in his lifetime, had made large contracts for the sale of real estate, and owned large parcels of land as

tenant in common with others. His daughters, by reason of some mistake or misapprehension, were supposed to take estates in fee simple under the will; and the settlement of his estate proceeded under this misapprehension; the daughters (and Mrs. Austin's trustees after her marriage) undertaking to convey in fee, joining with those holding the shares devised by Benjamin Joy to his sons, in carrying out the contracts above mentioned, and in making partition with the other owners of lands held by their father, as tenant in common; and also making and receiving conveyances in fee, in the partitions made among themselves by the devisees, or those representing their shares, of other lands left by Benjamin Joy.

Hannah, the widow of Benjamin, afterwards died, and by a codicil to her will, proved on the 28th of February, 1842, devised one third part of all her real estate to Elizabeth Joy, one third part to the trustees under Mrs. Austin's marriage settlement, and the remaining third part to the trustees under John B. Joy's marriage settlement.

Long after the estate of Benjamin Joy had been settled in the way above described, it was discovered, that the daughters took only beneficial estates for life, under their father's will, and that the conveyances made by them in fee, under the various circumstances above enumerated, were consequently invalid as such. This discovery also raised a question as to the validity, by reason of the defect of notice, of the sales and conveyances made by the executrix under the license from the judge of probate, to sell real estate for the payment of debts.

The real estate of Benjamin Joy being very large, both in Massachusetts and Maine, these invalid conveyances affected the titles of many estates of great value, and involved many persons in difficulties and embarrassments. Measures were at once taken to endeavor to correct the mistakes and remedy the evils. On the 25th of January, 1847, trustees in behalf of the daughters were for the first time appointed by the judge of probate, under the will of Benjamin Joy; Henry

41 *

Andrews and Amos Cotting, as trustees, in behalf of Elizabeth Joy, and John F. Loring and Henry Andrews, as trustees, in behalf of Hannah Austin. On the same day, John F. Loring and Henry Andrews were appointed trustees, under the will of Hannah Joy, in behalf of Mrs. Austin, and James W Paige and Amos Cotting, trustees under the same will, in behalf of John B. Joy.

The several parties interested, as above mentioned, under Benjamin Joy's will, and their trustees, then made an application to the legislature, to confirm the defective proceedings above alluded to, and, for that purpose, presented a petition signed by them to the general court, at the January session, 1847, in the terms following : —

"To the Honorable the Senate and House of Representatives in General Court assembled, Respectfully represent :

"Elizabeth Joy, John B. Joy and Ellen M., his wife, Daniel Austin and Hannah, his wife, said Elizabeth, John, and Hannah being the three surviving children of Benjamin Joy, late of Boston, in the county of Suffolk, gentleman, deceased; John F. Loring and Henry Andrews, trustees under the last will of said Benjamin, for and in behalf of said Hannah, also trustees under the will of Hannah Joy, widow of said Benjamin, and also deceased, for and in respect of said Daniel and Hannah Austin, as well as grantees under the marriage settlement of said Daniel and Hannah Austin ; Henry Andrews and Amos Cotting, trustees under said last will of said Benjamin, for and in behalf of said Elizabeth ; James W. Paige and Amos Cotting, trustees under said widow's said will, for and in behalf of said John B. and Ellen his wife, and also trustees under the marriage settlement of said John B. : That said Benjamin died seized of the whole of divers parcels of land, and of an undivided part of divers other parcels, situate in said commonwealth : That said Benjamin was, at the time of his decease, indebted in divers sums of money, and had made contracts for the conveyance of divers parcels of land : That since the decease of said Benjamin certain conveyances of real estate have been made by his widow, as executrix, under orders of the probate court for the county of Suffolk, and conveyances have also been made in pursuance of and to fulfil said contracts, entered into by said deceased in his lifetime ; and partitions by deeds of release have also been made between the devisees of said Benjamin and the other owners of the tracts of land whereof said Benjamin was seized as tenant in common ; and other conveyances have been made by parties claiming to be the devisees of said Benjamin to divers purchasers for valuable considerations, which have been satisfactorily accounted for to your petitioners.

"And whereas, it is apprehended that the title intended to have been conveyed by said several deeds and conveyances did not in fact pass thereby ;

and your petitioners are the only persons interested as the ultimate devisees of the real estate of which said Benjamin died seized, and are desirous that all and singular the sales and conveyances thereof, made as aforesaid, should be fully ratified, confirmed and established; and that all and singular the titles to any and all real estate now held by the several grantees and their respective heirs and assigns, under said conveyances and deeds respectively, be made valid and effectual to all intents and purposes; and that certain portions of the real estate of said Benjamin not embraced in said deeds and conveyances may be divided among your petitioners in such shares and proportions as said Benjamin by his said will intended the same to have been shared between them. And whereas, in and by the trusts created by the last will and testament of said Benjamin, said trustees have not, as is apprehended, any power or authority to sell and convey real estate: And certain other portions of the real estate now held by force of said will are so situated that it is highly important that some one should be authorized to sell and convey the same.

"Now, your petitioners pray that all and any such deeds and conveyances may be declared valid and effectual to all intents and purposes to pass the estate intended to have been granted thereby, and that the title of the respective grantees named therein, and of their respective heirs and assigns, may be forever confirmed and established.

"And that William Sohier, of said Boston, esquire, be authorized by your honorable body to make, execute and deliver to any and all persons holding title under said deeds and conveyances made as aforesaid, confirmatory deeds of the estates so held by them respectively, and to convey and pass to them and their respective heirs and assigns the respective estates intended to be granted to them by said deeds and conveyances, the full equivalent for all and singular the said sales and conveyances having been received by said Benjamin in his lifetime, or by said executrix since his decease, or accounted for to the satisfaction of your petitioners as aforesaid.

"And your petitioners further pray that said Sohier be authorized and empowered to make partition between them at his discretion, of any portion of the real estate of which said Benjamin died seized, (which is not embraced in the deeds and conveyances before mentioned,) and to sell and convey at his discretion any other portions of such real estate, including any and all lots left in severalty by any partitions, for such considerations and on such terms, and at such time or times and in such way and manner as he shall judge best, and to make, execute and deliver to the purchasers respectively and their several and respective heirs and assigns, good and sufficient conveyances in fee simple or for any less estate, as he may think fit, and generally to have and exercise the same full and absolute control in, upon and over all and singular the said parcels of land, and the disposal and conveyance thereof, as said Benjamin Joy, if living, could have and exercise; and the said purchasers to be in no event bound to see to the application of the purchase money.

"And that said Sohier be authorized and empowered to divide and distribute the proceeds of such sales between and among your petitioners in the proportions in which by his will the said Benjamin intended that said real estate should be divided amongst them.

" Provided, however, that said Sohier shall first give bond with sureties to the judge of probate for the time being of said county of Suffolk, in such penalty as he (said judge) shall approve, conditioned faithfully to exercise all and singular the powers aforesaid, and to apply and dispose of the proceeds of sale in the way and manner aforesaid."

The legislature granted the prayer of this petition, and on the 21st of April, 1847, passed the following resolve : —

" *Resolved,* for the reasons in said petition set forth, that all sales and conveyances of the real estate, situate in this commonwealth, of which the late Benjamin Joy, of Boston, in the county of Suffolk, esquire, deceased, died legally seized, which have been heretofore made by Hannah Joy, widow of said Benjamin, as his executrix ; and all sales and conveyances of land, situate in this commonwealth, heretofore made in pursuance of, and to fulfil, contracts entered into by said Benjamin during his lifetime, and all partitions heretofore made between the said Hannah Joy, Elizabeth Joy, John B. Joy, Daniel Austin, and Hannah Austin, his wife, in her right, John F. Loring and Henry Andrews, trustees under the marriage settlement of said Daniel and Hannah, and James W. Paige and Amos Cotting, trustees under the marriage settlement of the said John B. Joy, and Ellen M., his wife, or either or any of them, claiming to be devisees of said Benjamin, and the other owners of tracts of land, situate in this commonwealth, whereof said Benjamin was legally seized of an undivided share as tenant in common ; and all sales and conveyances heretofore made by the said Hannah Joy, Elizabeth Joy, John B. Joy, Daniel Austin, and Hannah Austin, his wife, in her right, John F. Loring and Henry Andrews, trustees under the marriage settlement of said Daniel and Hannah, and James W. Paige and Amos Cotting, trustees under the marriage settlement of the said John B. Joy and Ellen M., his wife, or either or any of them, claiming to be devisees under the will of said Benjamin, to purchasers, for valuable considerations, be, and they hereby are, ratified, confirmed and established as fully as if said Benjamin Joy, being then alive, had executed the same ; and all and singular the titles now held under such conveyances, partitions and deeds, respectively, be, and they hereby are, made and declared to be valid and effectual to all intents and purposes, as fully as if said Benjamin Joy, being then alive, had executed the same ; and that William Sohier, of said Boston, esquire, be, and he hereby is, authorized and empowered to make, execute and deliver, to any and all persons holding title under said deeds, partitions, and conveyances, made as aforesaid, (and to such persons only,) confirmatory deeds of the estates so held by them respectively ; and to convey, confirm and assure, to them and their respective heirs and assigns, the several estates intended to have been granted or assigned, by said deeds, partitions, and conveyances, respectively, as fully as if said Benjamin Joy, being then alive, had executed the same ; and that said Sohier be, and he hereby is, authorized and empowered to make partition of, and also to sell and convey, at his discretion, for such considerations as he shall judge best, the whole or any parts or parcels of the real estate, in this commonwealth, whereof said Benjamin died legally seized, (and not included in the deeds, partitions and conveyances aforementioned,) and of any and all the lots of

land left in severalty by any partitions heretofore made between the said Hannah Joy, Elizabeth Joy, John B. Joy, Daniel Austin, and Hannah Austin, his wife, in her right, John F. Loring and Henry Andrews, trustees under the marriage settlement of said Daniel and Hannah, and James W. Paige and Amos Cotting, as trustees under the marriage settlement of the said John B. Joy, and Ellen M., his wife, or either or any of them, as devisees of said Benjamin, and the other owners as aforesaid, and to make, execute and deliver, to the several devisees of said Benjamin, any and all instruments which may be necessary or proper for the purpose of making partition, as aforesaid; and to make, execute and deliver, to any and all persons so purchasing, as aforesaid, good and sufficient conveyances of any and all parcels of land so sold, to hold to them and their respective heirs and assigns in fee simple, or for any less estate. And the purchasers under such conveyances are to be in no event bound to see to the application of the purchase money; and that said Sohier be, and he hereby is, authorized and empowered to divide and distribute the proceeds of such sales between and among the petitioners above named, in the proportions in which, by his said will, said Benjamin intended said real estate should be divided among them. And that the shares of said real estate, or the proceeds thereof, which shall be received from the said Sohier, under this resolve, by the trustees under the respective wills of the said Benjamin Joy and Hannah Joy, and by the trustees under the respective marriage settlements of said John B. and Ellen M. Joy, and of said Daniel and Hannah Austin, shall be held by said trustees respectively, upon the trusts, and to and for the uses, intents and purposes in and by said wills and settlements respectively declared, concerning the respective trust funds created, or intended to have been created, by said wills and settlements respectively.

"*Provided, however*, that said Sohier shall first give such bond, with sureties to the judge of probate, for the time being, of the county of Suffolk, as said judge shall approve, conditioned faithfully to exercise all and singular the powers aforesaid, and to apply and dispose of the proceeds of sale in the way and manner aforesaid. But said Sohier is not to be bound to see to the proper application by said petitioners, or either of them, of the shares which they may respectively receive or take from him under and by virtue of this resolve. And *provided, also*, that the said Henry Andrews and Amos Cotting, as trustees, under the will of said Benjamin, for and in behalf of said Elizabeth Joy, and that said John F. Loring and the said Henry Andrews, as trustees under said will, for and in behalf of said Hannah Austin, shall first give bonds, to the satisfaction of said judge of probate, conditioned that such portions of the real estate of said Benjamin, or the proceeds thereof, as shall be received by them respectively from the said Sohier, under this resolve, shall be faithfully applied upon the trusts, and to and for the uses, intents and purposes in and by said will declared concerning the same. *Approved by the Governor, April* 21, 1847."

On the 22d of November, 1847, William Sohier, the plaintiff, gave bond in accordance with the provisions of the resolve; and on the same day, in order to facilitate and

confirm the exercise by him of the powers conferred by the resolve, a deed was made to him, from all the parties who had joined in the petition, conveying a piece of land in Somerville, (being part of the real estate of which Benjamin Joy died seized,) in trust for the purposes mentioned in the resolve.

On the 29th of December, 1847, the plaintiff made a contract under seal with the trustees of the Massachusetts General Hospital, the defendants, to sell them this piece of land, and the trustees agreed to purchase the same, or any part of it, to which the plaintiff could himself make, or could procure, a good title, at a stipulated price. The plaintiff, " in the exercise of the power and authority on him conferred by the resolve, and by the deed of November 22d, 1847," assigned to Elizabeth Joy, as part of her share of the real estate of Benjamin Joy, one half of this piece of land, but made, at that time, no further distribution of Mr. Joy's estate. He then tendered to the defendants a deed from Elizabeth Joy of this half, and a deed from himself of the other half, of the land in Somerville ; but the defendants refused to accept either of the deeds, or to complete the purchase for any part of the land ; and this action was then brought against the defendants, on the contract made on the 29th of December, 1847, for such refusal.

*W. Sohier,* for himself, submitted the following argument in writing : —

The only doubts, as to the title in controversy in this case, arise upon the question, whether the legislature, in passing the resolve under which the plaintiff claims to act, have exceeded their constitutional power. 1. The resolve does not contravene the provision of the constitution of the United States, prohibiting the states from passing laws impairing the obligation of contracts. It was passed expressly to confirm the validity of contracts made in good faith, but under a misapprehension by the parties of the extent of their legal rights. *Satterlee* v. *Matthewson,* 2 Pet. 380 ; *Cochran* v. *Van Surlay,* 20 Wend. 365.

**2.** It does not violate the provisions of the constitution of Massachusetts. If this were a new case, it might be a very perplexing one. It seems very difficult, on principle, to sustain any legislation for particular cases ; for such legislation is in fact either an exercise of something like judicial functions, or a suspension of general laws to meet the exigencies of a particular case ; both of which are unconstitutional. But such legislation has always existed in Massachusetts, and it will be sufficient to refer to a few instances of its exercise. The acts of a deputy sheriff, after the death of his principal, or of one who has neglected to give bonds, according to law, have been confirmed ; the courts of law have been empowered to hold special terms at particular times and places ; persons not naturalized citizens have been enabled to hold and convey lands. Towns, churches, colleges, and other public institutions have been authorized to buy and sell real estate. And there have been innumerable instances of trustees and guardians obtaining authority from the same quarter to sell lands. See especially the resolves of the legislature of Massachusetts, for the years 1842, 1845, and 1846. Generally, no opposition has been made to the exercise of powers so conferred; but when made, the acts of the legislature have been sustained by the courts. *Rice* v. *Parkman*, 16 Mass. 326 ; *Davison* v. *Johonnot*, 7 Met. 388. It is no valid objection, that the resolve proposed to affect the rights of remainder-men, by authorizing conveyances in fee simple, and thus turning lands into money. *Blagge* v. *Miles*, 1 Story, R. 426 ; *Rice* v. *Parkman*, above cited ; and see Rev. Sts. *c.* 71, §§ 4, 27 ; and here the rights of remainder-men are effectually secured by the provision in the resolve, which requires the plaintiff to give bonds, that the proceeds of all sales shall be disposed of in the proper manner, according to the testator's will. Nor is it any objection, that the sale is to be made by a stranger, if he be appointed with the knowledge and consent of the parties in interest, and be capable of properly using the power intrusted to him ; and, indeed, there would seem to be less danger of bias or prejudice, than

if the power were intrusted to one beneficially interested in the estate; yet in the case of *Cochran* v. *Van Surlay*, one entitled to the beneficial life estate was allowed to sell, and the sale was sustained. And see *St.* 1838, *c.* 190. Nor is it a good objection, that the power extends to the whole real estate of which Mr. Joy died seized. In the case of *Blagge* v̄. *Miles*, above cited, the whole trust estate was sold. If it be said, that it is only in cases of necessity, that a sale so extensive is allowed, the answer is, that the necessity in fact exists in this instance, and the legislature, in passing this resolve, have recognized its existence. And, indeed, the last two objections apply rather to the question, whether the legislature have well exercised their discretion, than to the question, whether such discretion is vested in them. The state of facts, in this case, the extreme confusion in the titles, and the consequent deterioration in value of the property, much of which is unimproved, and the unanimity of all the parties in interest, show that the legislature have judged rightly in exercising their discretion.

The case was submitted without argument by *N. I. Bowditch* and *J. Lowell,* for the defendants.

FLETCHER, J. [After stating the facts.] The resolve of the legislature confirms, in the first place, the conveyances which had been made by the executrix, under and by virtue of the license from the judge of probate. The resolve, so far, being designed to perfect and quiet titles, by curing defects which have happened by reason of mistakes or accidents, in matters of form, is clearly within the scope of the highly useful and even necessary power often exercised by the legislature, at all periods, and without complaint or objection.

The resolve proceeds to confirm the conveyances made by the daughters, in fee, of the land, contracts for which had been made with the testator in his lifetime; also the conveyances made and received by the daughters, in fee, upon partition of lands held by the testator in common with other persons; and also the conveyances made by the daughters, in fee, of lands of which the testator died seized, and which

were sold by the daughters and son, the devisees, and the consideration received by them in full.

In all the foregoing cases, the conveyances made by the daughters, in fee, are confirmed by°the resolve; and William Sohier is authorized to make full and complete confirmatory deeds. But no provision whatever is made for securing the interests of those, who are entitled to the remainder of these lands, after the decease of the daughters. The daughters, who have but a life interest, convey the lands absolutely in fee, and receive the whole consideration, and these conveyances are by the resolve fully confirmed. The effect of this is, to deprive those having the remainder completely and entirely of their estates, without any consideration. It is, in fact, by a special act of legislation, taking away from persons their estates, without their consent, and without any compensation, or provision for compensation. It is taking from one person his property, without his knowledge or consent, and without his being heard, or having an opportunity to be heard, and transferring it to others, without compensation, and without supposing, or any ground for supposing, that the person whose property is taken away is or can be benefited by the act.

It surely can require no argument to show, that such an act is contrary to the spirit and the terms of the constitution of this commonwealth, and not within the powers granted by the people to the legislature. Every individual has a right, under the constitution, to be protected in the enjoyment of his property, and no one can be wholly and entirely deprived of it, by having it taken from him and transferred to another, without compensation or benefit in any way, by a special act of legislation. All this part of the resolve, therefore, is clearly unconstitutional and void. The court is bound to presume, that the effect and operation of this part of the resolve escaped the notice of the legislature, and that it could not have been their intention to do what is in fact done by this portion of the resolve, in its present form.

The remainder of the resolve relates to estates of which

Benjamin Joy died seized, and which had not been conveyed away, but were still held by the devisees. Partition of these estates by the devisees had been made among themselves, but made upon the understanding that the daughters had estates in fee, and conveyances were made by and to them in fee, so that the titles under this partition were invalid. The intention of the devisees was, therefore, to abandon this partition,, and have a new partition or sale of their estates under and by virtue of the resolve.

The resolve, accordingly, empowered William Sohier, the plaintiff, to make partition, at his discretion, of the whole or any part of these estates, and also of any estates held in severalty, under partitions made between the devisees and other persons, who held in common with the testator. It is probably competent for the legislature to provide for making partition by a special act, as they may authorize a sale by a special act, though there are general laws on these subjects. The power given to the plaintiff is very general and extraordinary. He is to make partition, at his discretion. The resolve does not say, in terms, that he shall have any regard to the legal rights of the parties, though such might perhaps be the proper construction.

There is no provision for notifying or hearing the parties; or for making any return to any place, or to any tribunal; or for revising or examining in any way his doings. The resolve does not in terms authorize or require the plaintiff, in making partition, to convey any part of the estate to the trustees of the daughters under Benjamin Joy's will, though, perhaps, by construction, and inference, it might be held, that he was in substance and effect so authorized and required. The resolve authorizes the partition of estates set out to the devisees, in severalty, upon the partition of the estates, in which the testator was a tenant in common with other persons. But these estates were set out to the devisees, in consideration of conveyances made by the daughters in fee, which they had no right to make, and which are therefore invalid.

If these conveyances, made by the daughters in fee, are not confirmed by the resolve, according to the views hereinbefore expressed, it could hardly have been intended by the legislature, that the estates conveyed to the devisees should be confirmed or held by them. That is, if the estates conveyed by the devisees are invalid, it could not probably have been intended that they should hold the estates conveyed to them in exchange, and have partition of them. These are the general principles and views, upon which the validity of the resolve in regard to making partition would have to be determined, if it were necessary to make any decision on this point.

The resolve also authorizes and empowers the plaintiff to sell and convey, at his discretion, all the estates of which Benjamin Joy died seized, and which have not been conveyed, but are now held by the devisees, and also all estates set out in severalty to the devisees, upon partition between them and other persons, who were tenants in common with the testator. The same remarks apply to the sales of the last named estates, which were made in reference to the partition of these. It could not probably have been the intention of the legislature, to confirm to the devisees the estates set out to them, in partition, when their conveyances, which formed the consideration, are not confirmed, and are invalid. But, upon this part of the resolve, it is not necessary to express any decided opinion.

So far as respects the sale of the land, of which Benjamin Joy died seized, the case stands thus. There are the following parties : John B. Joy who had an interest in fee ; the two daughters who had an interest for life in the shares which they took under the will of their father, with remainder over to their issue or heirs generally, and an interest in fee in the shares which came to them from their brother Joseph, in part directly, and in part through their mother ; and the trustees of the daughters, appointed by the judge of probate under the wills of Benjamin and Hannah Joy, who hold the estates for the daughters during their lives, and then for their issue or general heirs, who have the remainder.

All the parties join in the petition, and the resolve provides that the proceeds of the sales authorized thereby shall be paid over to the petitioners, in the proportions to which they are entitled, under the will of Benjamin Joy ; that the trustees shall take and hold upon the trusts in and by the wills and settlements respectively declared ; and that they shall give bonds, that the proceeds shall be applied upon the trusts, and to and for the uses, intents and purposes in and by the will of Benjamin Joy declared concerning the same. Here are certain persons not known, or not in being, interested in an estate, who cannot act for themselves and make conveyances. It is important, very important, for all parties, that the estate should be sold. The persons having the interests for life are here and can act, those in remainder are not here and cannot act, but their trustees are here acting in favor of a sale.

The legislature authorizes the sale, taking care that the proceeds shall go to the trustees, duly appointed in pursuance of the provisions of the will of Benjamin Joy, for the use and benefit of those having the life estate, and of those having the remainder, as they are entitled under the will. This is depriving no one of his property, but is merely changing real into personal estate, for the benefit of all parties in interest. This part of the resolve, therefore, is within the scope of the power exercised from the earliest times, and repeatedly adjudged to be rightfully exercised by the legislature. In the case of *Rice* v. *Parkman,* 16 Mass. 326, it was adjudged, that the legislature might rightfully and properly authorize a tenant for life to sell the whole estate, thus converting the real into personal estate ; provision being made for securing the interest of those in remainder. The same doctrine was held by the circuit court of the United States for this circuit, in the case of *Blagge* v. *Miles,* 1 Story, R. 426. The same doctrine has been fully illustrated and maintained, in this court, in the case of *Davison* v. *Johonnot,* 7 Met. 388. See also *Clarke* v. *Van Surlay,* 15 Wend. 436 ; *Cochran* v. *Van Surlay,* 20 Wend. 365 ; *Bambaugh* v. *Bambaugh,* 11 Serg & R. 191 ; *Estep* v. *Hutchman,* 14 Serg. & R. 435.

It is deemed indispensable, that there should be a power in the legislature to authorize a sale of the estates of infants, idiots, insane persons, and persons not known,. or not in being, who cannot act for themselves. The best interest of these persons, and justice to other persons, often require that such sales should be made. It would be attended with incalculable mischiefs, injuries, and losses, if estates, in which persons are interested, who have not capacity to act for themselves, or who cannot be certainly ascertained, or are not in being, could under no circumstances be sold, and perfect titles effected. But, in such cases, the legislature, as *parens patriæ,* can disentangle and unfetter the estates, by authorizing a sale, taking precaution that the substantial rights of all parties are protected and secured. That the legislature has such power and may rightfully exercise it, has been fully settled, and the reasons and grounds of it fully illustrated and ex plained, in the adjudged cases, to which reference has already been made.

This power can by no means be considered as dangerous or objectionable, but, on the contrary, is a most necessary, useful, and beneficent power, which has long been habitually exercised, and should now by no means be fettered, or its rightfulness drawn in question. So far, therefore, as the resolve authorizes the sale of such estate as Benjamin Joy died seized of, the rights of all persons to the proceeds being fully protected and secured, there can be no valid objection. The validity of this part is not impaired by the invalidity of other distinct and independent portions of the resolve. That a third person, a stranger, is appointed to make the sale, cannot affect the principle, he being a suitable person.

Having now given a general view of the provisions of the resolve, I will proceed to a consideration of the acts done under and by virtue of it,. out of which arise the particular questions presented to the consideration of the court in this case. All the acts done were under and by virtue of that part of the resolve, which authorizes the plaintiff to make

42 *

partition of, and to sell at his discretion, any or all the estate of which Benjamin Joy died seized, which remained in the hands of the devisees, and which had not been conveyed away. Under this portion of the resolve, the plaintiff made a contract with the trustees of the Massachusetts General Hospital, to sell them a small piece of land at Somerville, of which Benjamin Joy died seized, and the defendants agreed to purchase it, or any part of it to which the plaintiff could himself make, or could procure, a good title.

Having made this contract, the plaintiff, with a view, it would seem, to present a question as to his power to make partition, made a deed of a small piece of the land, contracted to be sold to the defendants, to Elizabeth Joy, and then procured the deed of Elizabeth Joy of this piece, and offered it to the defendants, and offered his own deed of the remainder of the piece sold ; but the defendants refused to accept either deed, or to complete the purchase for any part of the land, alleging that no good title was made to any part. This action at law was then instituted on the contract, alleging, in the first place, that the deed of Elizabeth Joy made a good title to the land described in that deed.

The plaintiff, in his deed to Elizabeth Joy, refers to the resolve authorizing him to make partition, and also to the deed of the other heirs to him, and then conveys to her in fee a piece of land particularly described. The argument for the plaintiff is, that by making the deed to Elizabeth Joy, he made partition to her of that land, and that her deed to the defendants made a good title. But Elizabeth Joy was entitled to no land in fee, except the share she inherited from her brother, Joseph B., or her mother. Whether the land conveyed to her was intended as her share from her brother or mother does not appear. In fact, no calculation was made as to what she was entitled to in partition, but this piece was arbitrarily conveyed to her, merely to raise a question for the court. Nothing was conveyed to the other tenants in common, and no calculation made to ascertain the amount of the

shares of the respective parties in the whole or any part of the estate. There was in fact no partition.

To make partition, is to distribute to the parties in interest, the shares to which they are respectively entitled. To convey to Elizabeth Joy a piece of land, without any reference to the share to which she was entitled, and doing nothing as to the shares of others, would not be making partition. Supposing the plaintiff to have been duly authorized by the resolve to make partition, upon which it is not necessary now to express any opinion, and in regard to which, for the reasons before stated, there is great doubt, to say the least, he in fact made no partition to Elizabeth Joy of her share, so that her deed did not convey a good title to the defendants. The plaintiff, therefore, cannot recover on this part of his case. Then, as to the deed of the plaintiff himself, its sufficiency to convey a good title depends upon the general power given in the resolve to sell and convey the estate of which Benjamin Joy died seized, and which has already been referred to and considered at length.

This part of the resolve comes within the acknowledged power of the legislature, and has all the requirements and provisions, and was passed under all the circumstances, necessary to give it validity. All the parties in interest were represented, and the rights and interests of all persons are fully provided for and secured. In truth, the whole effect of this part of the resolve is merely to change real into personal estate, ample provision being made for securing to all persons all their rights and interests, in and to the proceeds of the real estate authorized to be sold.

The validity of this part of the resolve, therefore, is fully sustained by the reasons, which have been herein before given at large, and which need not be here repeated, and by the authorities which have been referred to, which bear directly on the point, and which are full and conclusive. This is a separate and distinct part of the resolve, and can well stand by itself, and is not affected by the invalidity of other portions of the resolve

So far as regards this part of the plaintiff's case, therefore, he is entitled to recover.

---

The portion of land, to which the plaintiff, by this decision, could make a good title, being very small, neither of the parties was disposed to carry into effect any part of the contract, and by an arrangement between them, a general judgment was entered for the defendants.