Argued December 11, 1918, affirmed February 18, 1919.

## LEE *v*. ALBRO.

## LEE *v*. MURPHY.

(178 Pac. 784.)

**Wills—Partial Intestacy—Distribution of Corpus of Trust Estate.**

1. Where will created trust with contingent remainder to testator's grandchildren or to testator's brothers and sisters and their issue in the event there are no grandchildren living at the expiration of the trust, the *corpus* of the estate upon termination of trust, if there are no grandchildren or brothers and sisters, or issue of brothers or sisters, will go to testator's heirs as in case of intestacy.

**Judgment—Conclusiveness of Decree—Unborn Persons—Representation.**

2. In trustee's action for authority to sell, mortgage, lease or improve real estate, the rule that the interests of unborn persons are bound by the decree of the court on the principle that all such persons are represented by living defendants whose interests are similar, as declared by Laws of 1917, page 304, Section 5, applies to every conceivable future interest, including an interest by way of executory devise.

**Wills—Contingent Remainder—Trusts.**

3. Where will created a trust with remainder to grandchildren or, if no grandchildren, to testator's brothers and sisters or their issue, the interest of the grandchildren was a primary contingent remainder, and that of the brothers and sisters a secondary contingent remainder; such remainders being only expectancies and not estates.

**Trusts—Management of Estate—Suit for Authority—Sufficiency of Evidence.**

4. In trustee's action under Laws of 1917, page 303, Section 1, for authority to sell, mortgage, improve, or lease property, evidence *held* to show that it was for the best interests of the beneficiaries to have a portion of land sold and to empower trustees to mortgage, lease, and improve other portions of the property.

**Judgment—Conclusiveness of Decree—Proceedings in Equity.**

5. It is a general rule, subject, however, to certain well-recognized exceptions, that in a proceeding in equity the interests of parties not before the court will not be bound by the decree.

**Judgment—Conclusiveness of Decree—Doctrine of Representation.**

6. In equity where it appears that a particular party not before the court in person is so far represented by others that his interests receive actual and efficient protection, the decree may be held binding upon him.

**Trusts—Preservation of Property—Statute.**

7. Laws of 1917, page 303, Section 1, providing that a court of equity may empower trustees to sell, mortgage, improve, lease, or otherwise deal in property, contemplates that expectant interests shall be carefully safeguarded and that the *corpus* of the estate shall be kept intact until termination of trust; the only change permissible being in the form of the property for the purpose of conserving the principal.

[As to instruction of trustee by court in regard to investment of trust funds, see note in Ann. Cas. 1912A, 637.]

**Trusts—Management—Suit for Authority—Service on Unknown Persons—Constitutional and Statutory Provisions.**

8. Laws of 1917, page 303, Section 1, providing how unknown persons may be made parties defendants to trustee's proceedings for authority to sell, improve or otherwise deal in real estate, and declaring that such unknown person shall be bound by the decree, is constitutional.

**Constitutional Law—Vested Interests—Expectancies—Contingent Remainders.**

9. Contingent remainders being mere expectancies are subject to legislative control prior to the actual vesting of the interest.

**Trusts—Management of Estate—Real Estate—Proceedings for Authority—Action in Rem.**

10. Trustee's action for authority to sell, improve, lease and otherwise deal in real estate under Laws of 1917, page 303, Section 1, as respects the procedure provided and the constructive service of notice

by publication upon nonresident defendants, unknown parties and unknown heirs, is to be classed with actions *in rem.*

[As to control of discretion of trustees by courts of equity, see note in 6 Am. St. Rep. 885.]

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.

The two appeals in the above-entitled suits have been consolidated and heard as one case. The first suit is brought by plaintiffs as trustees to secure a decree vesting in them, as such trustees under the will of Stephen Mead, deceased, broad powers with respect to all of the trust estate. This trust relates to real property situated in the City of Portland, Oregon, and was created by the testator, who died in 1875. The trust has already run for over forty years and may continue for thirty years longer. The will of the testator does not expressly vest in the trustees broad enough powers to enable them to manage the trust property in such a way as to conserve it. Before the trust terminates the trust estate may be very seriously impaired unless the trustees are armed with ample power to meet the exigencies of the real estate market in Portland during the next thirty years. The complaint also asks that the sale of a part of this real estate to one Paul C. Murphy be approved by the court. All known living persons who are in any way interested in the trust property, whether under the terms of the will or as heirs at law of Stephen Mead, deceased, and all of their respective husbands and wives were made parties defendant to this suit. All of the adult defendants have made default which has been entered. S. B. Huston was duly appointed guardian *ad litem* for the infant defendants and interposed the usual answer of a guardian *ad litem.*

The trial court granted decrees as prayed for in the complaints. The guardian *ad litem* on behalf of the minor defendants and also Paul C. Murphy have appealed.         Affirmed.

For appellants there was a brief and an oral argument by *Mr. Samuel B. Huston.*

For respondents there was a brief over the names of *Mr. Guy C. H. Corliss* and *Messrs. Wood, Montague, Hunt & Cookingham,* with an oral argument by *Mr. Corliss.*

BEAN, J.—The substance of the complaint is as follows:

That Stephen Mead died about December 9, 1875, in the State of Connecticut; and at the time of his death he was a citizen of and had his domicile in that state; that he left a last will and codicil duly executed, copies of which are annexed to the complaint; that the will and codicil were duly admitted to probate by the Court of Probate of Connecticut on April 5, 1876; that the will and codicil were duly admitted to probate by the county court of Multnomah County, State of Oregon, on March 25, 1893, and duly recorded; that all of the persons named in the will and codicil as trustees of the trust therein created duly accepted the office of trustee and duly qualified and acted as trustees, except Joseph M. French, who on May 20, 1876, declined to accept the appointment as trustee; and that the other persons continued to act as such trustee down to July 27, 1892, when William W. Mead, the youngest of the testator's then living children, became of age, and that thereafter and on or about October 2, 1893, the trustees for themselves and on behalf of their cotrustee, William S. Ladd, who had died, duly trans-

ferred all their title as such trustees in and to the trust estate to the children of the testator as succeeding trustees, who were by the will designated and appointed as trustees of the trust from and after the date when the youngest living child should reach the age of twenty-one years, to wit: Anna L. Lee, Joshua Roberts Mead, Stella B. Mead and William W. Mead, who at the time constituted all of the children of the testator; that the deed of conveyance was duly recorded in the office of the county clerk of Multnomah County, Oregon, on September 27, 1894, in Book 216 of Deeds, at page 255; that the executors named in the will duly administered the estate in the Probate Court of Connecticut and duly discharged all the duties required of them under the terms of the will and codicil under the laws of that state, and that they were by the order and decree of the court duly discharged from all liability as executors of the will, but not as trustees under the trust created in and by the will and codicil.

That the testator at the time of his death was the owner of real estate situated in the State of California; that the testator at the time of his death also owned an interest in the copartnership of Ladd & Tilton of Portland, Oregon, which was disposed of by the trustees, and they ultimately invested the trust funds derived thereby in certain real estate in the City of Portland, Oregon, all of which real estate, except that portion of Mead's Addition which was sold, is described in the complaint; that all of the deeds of conveyance of the real estate were taken in the names of the trustees, to wit, in the names of William S. Ladd, Granville B. Gillman, David M. French and Charles E. Tilton, and the testator never at any time held the legal title to any of the real estate; that a portion of

the real estate was sold; that a part of the before mentioned real estate is described as follows, to wit: Lots three (3) and four (4), Block one hundred seventy-five (175), of the City of Portland, Multnomah County, Oregon, and is situated on the northwest corner of Washington and Fifth streets in the City of Portland; that the property has been improved by the erection of a 7-story building thereon by the trustees at a cost of $195,000; and that the lots and building have been leased by the trustees for a term of fifteen years and two months from November 1, 1914; that the property known as the Mead sixteen (16) acre tract by reason of improvements made by tenants has greatly increased the net revenue derived therefrom; during the year 1908, it was the sum of $1,989.30, and that the net revenue has increased until during the year 1916 the same was $3,928.12, and the net revenue was thereby increased more than 33%. That other parcels of the real estate which are described are improved but little and the net revenue therefrom has decreased largely, while on some parcels the net revenue therefrom has increased slightly; that the total net revenue derived from all of the described real estate, except the property situated on the northwest corner of Fifth and Washington Streets, was during the year 1908 about the sum of $28,991.44. It increased in 1909 and during 1910 it reached the highest point of $36,372.56, but that ever since 1910 the net revenue has been decreasing, and after the year 1913 began to decrease very rapidly, and that the net revenue during the year 1916 was $86.47.

That the best interests of all parties concerned, both from the standpoint of securing revenue from the property, and also from the standpoint of conserving the *corpus* of the estate for those who are to take the

same at the termination of the trust, require that some of the property be improved, some of it sold and some of it leased on long time leases; that owing to the development of the City of Portland, in which all of the real estate is located, the situation of the property has undergone changes in permanent value and future possibilities of value since the same was purchased by the trustees under the last will and testament of Stephen Mead, deceased; that some of it is not sufficiently improved in proportion to its economic value; that some of the improvements have become obsolete and impair the income producing power of the property on which they are located, which property could be made to produce a much higher revenue if improved in harmony with its location and business possibilities; that some of the improvements are old and the depreciation is great and rapidly increasing, and that the need of constant repair to keep the same in condition to produce any revenue at all is so great as to seriously impair its income producing power, and that this condition is certain to become aggravated from year to year, and that on account of business and other economic conditions, some of the real estate is destined to decrease in value, and that wise business judgment requires that the same be exchanged for other property or sold and the money invested in other property; that real estate conditions in the City of Portland are such at the present time that more advantageous changes of this kind can be made now and in the near future than at a later period when opportunities for paying investments in real estate would not be so numerous as at present; that the best interests of all parties concerned require that the trustees should be given the broad power of absolute owners in dealing with the property as a whole, subject to

the orders and decrees of the court, keeping in view
at all times the rights of those who are to take the
property at the termination of the trust to have the
*corpus* of the property preserved; that it is impos-
sible for the trustees in advance of an interlocutory
decree, giving them full authority to deal with the
property with the broad power of absolute owners,
subject, however, to the approval of the court, to enter
upon negotiations for the sale, exchange, leasing or
improving of any of the property; that unless the trus-
tees are given such broad powers with respect to the
property, the trust estate as a whole will suffer great
loss in its power to produce income and the *corpus* of
the trust estate will be seriously impaired; that the
only descendants of the testator now living are the
children, grandchildren and great-grandchildren, all
of whom are defendants in this suit.  The complaint
gives their names, ages and places of residence.

That plaintiffs as such trustees have entered into a
contract with Paul C. Murphy for the sale of one of
the pieces of real estate for the sum of ten thousand
($10,000) dollars, subject to the approval of this court,
and that a copy of the contract is attached to this com-
plaint and marked Exhibit "B"; that the sale will be
advantageous to all parties interested in the trust
property for the following reasons:

The building on the lot is very old and the physical
depreciation is very rapid; the character and nature
of the district is changing very rapidly from one of
agricultural implement and supply house district to
that of second-hand and junk dealers; that movement
is in progress now, opening up a logical market for
the property to men in this business.  With this class
of business established the economic depreciation,
which is well under way now, will become even more

rapid; the property will not warrant additional expenditure for new buildings as it will not attract high-grade tenants; and the rentals, because of the character of the tenants and owners in the street, will rapidly decrease. The money obtained from this property could be used to much better advantage in improving some of the properties in the estate which are now suffering for lack of adequate improvement or for other legitimate development needs of the estate; that the only method the trustees have of raising the money needed for the improvements, bettering and other activities necessary for the preservation of the estate is to sell or mortgage some of the property or execute ground leases for a long period of years.

The second suit is brought by plaintiffs as such trustees against Paul C. Murphy to compel the specific performance of the contract made by the trustees with Paul C. Murphy for the sale to him of one-half lot for the sum of ten thousand ($10,000) dollars. Appropriate allegations of the contract for the sale are set forth in the complaint to which defendant Murphy demurred. The only grounds on which he refuses to carry out his contract of purchase is that the decree in the first suit does not bind unborn persons who may ultimately have an interest in the trust property and does not bind any possible unknown defendants who have not been made parties defendant by name. For these reasons defendant claims that the title which the trustees might convey to him under the deed authorized by the court will not be a marketable title. The court overruled the demurrer to the complaint and defendant Murphy elected to stand upon the demurrer. The court thereupon entered a final decree directing specific performance of the contract.

The trial court granted the relief prayed for in the complaints and among other things adjudged as follows:

"It is further adjudged and decreed that the said plaintiffs as such trustees be and they are authorized and empowered to sell, exchange, mortgage, lease or otherwise deal with any or all of the real estate described in the complaint herein, subject, however, to the final approval of the court, and that said trustees be and they hereby are authorized and empowered to enter into any and all necessary contracts for the sale, exchange, mortgaging, leasing or otherwise dealing with all of said trust property, or any part thereof, which said contracts shall not be finally binding and shall not be consummated until after the same shall have been duly reported to the court and until after the court shall have received evidence for the purpose of determining whether the confirmation and consummation of said contracts be for the best interests of all parties interested in said trust property, including the interests of all contingent remainder-men living and yet unborn, and shall have confirmed the same.

"It is further adjudged and decreed that after said report has been filed the court may * * take up the matter of a hearing upon said report; that upon said hearing any party shall have the right to introduce such evidence as he desires touching the question whether the said report should be confirmed."

1. The substantial provisions of the will are as follows: (1) The will devises and bequeaths all of the estate, after paying certain specific legacies, to certain trustees, who are to manage the trust estate for the benefit of the testator's widow and sister, Mrs. Davis, paying to them during their respective lives certain annuities out of the income of the trust estate. And further to pay to each of the testator's children certain annuities, increasing in amount as the children grew older. (2) Upon the youngest of his living chil-

dren reaching the age of twenty-one years, the children are to be substituted as trustees in place of the persons to whom the trust estate was devised; and with these new trustees managing the trust, it is to continue during the lives of the widow, sister and said children. The plaintiffs are the new trustees, being the then surviving children of the testator, all of whom are over twenty-one years of age. During this period of the trust the trustees are to continue to pay to the widow and the sister the same annuities as before; but the annuities to the children thereafter are not to be specific in amount, but to be the net amount of the income from the trust property left after paying the annuities to the widow and sister. This net amount is to be divided equally between the children and the heirs of such of them as shall have died. (3) Upon the death of the longest lived child of the testator, and of his widow and sister, Mrs. Davis, the trust is to end, and the *corpus* of the estate then and there vests in the persons designated in the will in the order specified, to wit: First, in his grandchildren then living, to be divided between them equally and not *per stirpes*. Second, but if there should be no grandchild or other descendant living at the termination of the trust, then the *corpus* of the estate is to go to the testator's brothers and sisters of the whole and half blood, and to their issue, to be divided among them by number and not by representation. (4) The will in no manner provides for the contingency of there being no descendants and no brother or sister of the testator, and no issue of such brother or sister living at the termination of the trust. Should this contingency arise, the *corpus* of the estate would go to the heirs of the testator, as in case of intestacy upon the ground that that interest had not been disposed of by the will. To

summarize the provisions of the will then we have the following: (1) A trust estate in the trustees for the benefit of certain beneficiaries, to last until the death of the widow, sister and longest lived child. (2) For the purposes of this trust the legal title, so far as needed, was given to the trustees, but this did not include the entire fee, as the purposes of the trust did not require this. (3) A contingent remainder was given such of the grandchildren or other descendants as should be living at the expiration of the trust. This is the *primary* contingent remainder. (4) The *secondary* contingent remainder is given to the brothers and sisters of the testator and their issue in the event that the primary contingent remainder does not vest because there are no grandchildren or other descendants living at the expiration of the trust.

The trust property consists of seventeen parcels of property in the City of Portland ranging in size from a half lot twenty-five feet by one hundred feet to an acreage tract of sixteen acres, all lying within the city limits, and all lying on the West side. These pieces range in character from business locations in the very heart of the retail district to the different classes of cheaper retail, jobbing, manufacturing and small cheap residence property. A good deal of the property is now calling for improvement and there is some piece suitable for almost every class of development. A good deal might be classed as having high-grade apartment house possibilities, and in realty valuation in many cities first-class apartment property ranges as second in value to intensified retail store property, when properly improved.

The two appeals present four questions: First, should the decree of the court in the first suit conferring upon the trustees the broad powers therein speci-

fied be affirmed? Second, should that part of the decree authorizing the trustees to sell and convey to Paul C. Murphy the particular piece of real estate therein described be affirmed? Third, will the decree in this suit be binding upon all unborn persons who may hereafter secure an interest in the trust property? Fourth, will such decree be binding upon any unknown persons who may not have been made parties defendant by name?

It should be noted at the outset that the plaintiffs do not seek to destroy or impair the trust, nor do they ask that any of the *corpus* of the trust estate be converted into income and divided. The sole purpose of the suit is to enable the trustees to so handle the trust estate as to preserve it and at the same time produce a reasonable income for the beneficiaries under the trust. The evidence introduced satisfied the trial court that the broad powers sought by the plaintiffs should be conferred upon them. The court, however, in its decree provided that in no case should any of these powers be finally exercised by the trustees without submitting the particular transaction to the court for investigation and approval or rejection. The court also provided in its decree that any defendant although in default, should have the right at any time to appear and be heard with respect to any exercise of power by the trustees. The court also approved the sale of one of these pieces of real estate to Paul C. Murphy and authorized the trustees to execute a deed of the same to Murphy on the payment of ten thousand ($10,000) dollars.

In 1917, the legislature of this state enacted Chapter 198, Laws of 1917, page 303. Defining and enlarging the powers of trustees in cases of trust, authorizing courts of equity to supervise and control the

exercise of such powers and providing for the procedure and parties bound in suits involving such matters. The provisions of the law so far as deemed necessary to note are as follows:

"Section 1. When any trust in real or personal property, or both, shall have heretofore been created, or shall hereafter be created, by will, deed or otherwise, and the trustee or trustees of such trust, or any person interested in said trust or any person interested in the property embraced in said trust upon the termination thereof, whether such latter interest be by way of a vested or contingent remainder, executory devise, conditional limitation, shifting use, or of any other nature, shall deem it for the interest of all persons who are or may become interested in said property that the same or any part thereof should be sold, mortgaged, improved, exchanged or leased; or otherwise dealt with in any other manner, such party or parties may commence a suit for the purpose of obtaining a decree for the sale, mortgaging, leasing, improving, exchanging of, or otherwise dealing with said property, or any portion thereof. Any court of equity in a county in which any of such trust property may be situated shall have jurisdiction to hear the cause of suit and enter the proper decree."

The act directs that all persons who are living at the time of the commencement of such suit, and who are interested whether as trustees or as beneficiaries in the property under the trust, or who have any vested, contingent, executory or reversionary interest therein at the termination of the trust, shall be made parties to the suit, and provides that any person whose name, identity or existence is unknown may be made a party by being designated in the title of the suit as "other unknown parties who have or claim some title, estate, lien or interest in the property described in the complaint herein." If such unknown parties are the heirs of any such deceased person, they

may be proceeded against under the name and title of "the unknown heirs of [naming the deceased]," and provides for the service of the summons to be made on such unknown heirs or unknown persons by publication thereof in the same manner as in suits against nonresident defendants. Section 5 provides that:

"All interested persons who are born subsequent to the commencement of said suit shall be deemed parties to said suit by being represented therein by the defendants served, and shall be bound by any decree or decrees therein as fully as if made parties and duly served with process therein."

Courts of equity have inherent power to authorize trustees to so handle the trust property as to conserve it and protect all interests, even though the instrument creating the trust does not give the trustees such power, this in order to carry out the main purpose of the trust: 39 Cyc. 352; 2 Perry on Trusts, § 764; *Hale v. Hale,* 146 Ill. 227 (33 N. E. 858, 20 L. R. A. 247); *Gavin v. Curtin,* 171 Ill. 640 (49 N. E. 523, 40 L. R. A. 776); *Marsh v. Reed,* 184 Ill. 263 (56 N. E. 306); *American Trust Co. v. Nicholson,* 162 N. C. 257 (78 S. E. 152).

2. It would seem that in the main, Chapter 198, Laws of 1917, is only a declaration and modification of the existing law on the subject. It empowers the courts to act only when it appears that the authority given the trustees by the court is for the best interests of all persons interested in the property, and the statute carefully safeguards the *corpus* of the estate. It declares a settled rule of procedure that in cases of this kind the interests of all unborn persons are bound by the decree of the court, on the principle that all such persons are represented by the living defendants whose interests are similar: *Bransford Realty Co. v.*

*Andrews,* 128 Tenn. 725 (164 S. W. 1175); *Ridley* v. *Halliday,* 106 Tenn. 607 (61 S. W. 1025, 82 Am. St. Rep. 902, 53 L. R. A. 477); *Mayall* v. *Mayall,* 63 Minn. 511 (65 N. W. 942); *Kent* v. *Church,* 136 N. Y. 10 (32 N. E. 704, 32 Am. St. Rep. 693, 18 L. R. A. 331); *Thompson* v. *Adams,* 205 Ill. 552 (69 N. E. 1); *Bernard* v. *Bernard,* 79 S. C. 364 (60 S. E. 700, 128 Am. St. Rep. 852). This rule applies to every conceivable future interest, including an interest by way of executory devise: *Miller* v. *Texas & Pac. R. Co.,* 132 U. S. 622 (33 L. Ed. 487, 10 Sup. Ct. Rep. 206).

3. The interest of the children and issue of plaintiffs in the trust property is by way of a contingent remainder and not by way of executory devise. The same is true also of the interest of the brothers and sisters of the testator and their descendants. Such interest is an alternative contingent remainder. A primary contingent remainder is vested in the descendants of the children of the testator, and in the event of there being no such descendants living when the trust ceases, a secondary contingent remainder is limited to the brothers and sisters of the testator and to their descendants: 1 Tiffany on Real Property, p. 300; 2 Washburn on Real Property, § 1575; *Thomas* v. *Castle,* 76 Conn. 447 (56 Atl. 854); *Hennessy* v. *Patterson,* 85 N. Y. 91, 100; *Den* v. *Crawford,* 8 N. J. Law, 90, 96; *Archer* v. *Jacobs,* 125 Iowa, 467 (101 N. W. 195). These contingent remainders are not estates in the property, but only expectancies, the vested remainder in fee after the termination of the trust being in the heirs at law of Stephen Mead as property undisposed of under the will. This vested remainder in fee is subject to be divested in case either of these contingent remainders takes effect: *Brown* v. *Kamerer,* 276 Ill. 69 (114 N. E. 544); *Ball* v. *Safe-Deposit &*

*Trust Co.,* 92 Md. 503 (48 Atl. 155, 157, 52 L. R. A. 403); *Long* v. *Long,* 62 Md. 33, 67; *Peterson* v. *Jackson,* 196 Ill. 40 (63 N. E. 643, 646); *Young* v. *Hyde,* 255 Mo. 496 (164 S. W. 228).

4. The statute is made applicable to existing trusts. It merely amplifies the inherent power of courts of equity in such cases. It in no manner affects any vested rights under the trust, for the reason that it merely empowers the court to authorize the trustee to change the form of the trust property without in any manner impairing the *corpus* of the trust fund whenever the court finds that this is for the best interests of all parties concerned. The purpose of the suit is to authorize the trustees to make suitable provisions for contingencies which could not have been naturally anticipated for forty or fifty years in advance. Although the donor displayed great wisdom and foresight, it was, of course, impossible for him at that early date to gauge the growth of the metropolis of this state so as to make provisions for so managing the property that it could bear its portion of the necessary burden of taxation and assessments made by a city and at the same time produce a fair income. It may safely be said that property situated like that in question in the City of Portland will either improve or deteriorate. If it is properly improved, its revenue, as near as can be, is guaranteed; if it deteriorates the *corpus* of the trust is endangered and may be lost to those to whom it will belong when the trust ceases. In a certain sense, in a case of this kind, a court of equity authorizes the trustees to act for the minors and those who cannot act for themselves in the protection and preservation of the *corpus* of the trust estate, not in any way against their interests, but in aid of the main purpose of the trust and in the

exercise thereof, for the good of the beneficiaries. The power of courts of chancery by virtue of their general jurisdiction over the estates of infants to authorize the conversion of their real estate into personal where it is clearly for their interest that such conversion should be made is supported by the general current of authority in this country. The facts showing that it is for the best interests of the beneficiaries of the trust estate to have a portion of the land sold and to empower the trustees to mortgage, lease and improve other portions of the real property as alleged in the complaint are clearly shown. In our opinion they are sufficient to justify the decree. These parcels of real estate situated in different places in the City of Portland have, with the surrounding property, undergone great changes since the trust was created, many of the lots will be of little or no value to lie idle without improvement, but if properly improved will produce a fair income. In any event, they must bear their portion of the burdens of ordinary city improvements such as paving of the streets, construction of sewers and other municipal improvements, and the time for making such improvements as buildings upon the lots as the testimony discloses is now ripe.

5, 6. One question submitted is whether it is a valid objection to the decree that there may be other persons not now in being who will have an interest in the residue of the estate when the trust ceases. All other persons *in esse* who have any possible interest in the estate were before the court. If other children, descendants of the testator, should hereafter be born, their equitable rights in the estate will be of precisely the same nature, or will in fact be identical with those of the other parties defendant who were brought before the court for the protection and defense of those

very interests.   It is a general rule, subject, however, to certain well-recognized exceptions that in a. proceeding in equity the interests of parties not before the court will not be bound by the decree.   Among the exceptions is one growing out of convenience or necessity in the administration of justice which has given rise to what is known as the ''doctrine of representation.''   Thus where it appears that a particular party thereof not before the court in person is so far represented by others that his interests receive actual and efficient protection, the decree may be held to be binding upon him.   The doctrine of representation is considered as an exception to the general rule requiring all persons in interest to be made parties: *Hale* v. *Hale,* 146 Ill. 227 (33 N. E. 858, 20 L. R. A. 247) ; Calvert on Parties to Suits in Equity, p. 19.

7. The legislation in this state is more favorable to those who have expectant interests in the property than the general rules, for this law contemplates that those expectant interests shall be carefully safeguarded and that the *corpus* of the trust estate shall be kept intact until the termination of the trust, to go then to the persons who are at that time entitled to it, the only change permissible being a change in the form of the property, and only such a change as will conserve the principal of the trust estate: *Upham* v. *Plankinton,* 152 Wis. 275 (140 N. W. 5, Ann. Cas. 1914C, 376, 48 L. R. A. (N. S.) 1004) ; *Bass* v. *Roanoke N. etc. Co.,* 111 N. C. 439 (16 S. E. 402, 19 L. R. A. 247) ; *Springs* v. *Scott,* 132 N. C. 548 (44 S. E. 116) ; *Sohier* v. *Massachusetts Gen. Hospital,* 57 Mass. (3 Cush.) 483.

8. All unknown persons who may have any interest in the trust property are bound by the decrees in the present suits.   The statute provides how such un-

known persons may be made parties defendant, and it declares that they shall be bound by the decree. The requirements of the statute were complied with. That such a provision is constitutional is well settled. In so far as the children of the plaintiffs are concerned, it is obvious that there is no possibility of there being any unknown living person belonging to this class who has not been named as a party to the suit. The allegations of the complaint and proof are conclusive on this point. With respect to the other class, namely, those who will take, if at all, under the secondary contingent remainder, we also have the allegations of the complaint and of the affidavit for an order of service by publication. The most that can be said is that there is the remotest possibility that there may be in existence a person or persons whose names are unknown who would in the extremely remote contingency that this secondary contingent remainder ever take effect secure a small interest in the *corpus* of the trust estate. It is competent for the lawmakers to authorize courts to acquire jurisdiction in the manner provided for by this statute over such unknown interests. Such interests will be as fully protected by the decrees as that of persons who are made parties to the suit by name. So far as the persons to whom the second contingent remainder is limited, it is perfectly obvious that their chance of ever securing any interest in this property is exceedingly remote. The death of all three of the plaintiffs who are the sole surviving children of Stephen Mead is bound to occur within a reasonable period of time, their respective ages being: Anna L. Lee, fifty-three years, Joshua Roberts Mead, fifty-one, and Stella B. Mead, age forty-seven. When the last of the three children dies, the contingent remainder to these secondary re-

maindermen will be destroyed if there is any child or issue of any of the three plaintiffs living at that time. The record shows that there are now living the following children and grandchildren of plaintiffs whose ages are respectively as follows: Children, Frank R. Mead, age twenty-seven, C. Shepard Lee, age twenty-four and Stephen Mead Lee, age twenty-one. Grandchildren of plaintiffs, Frank R. Mead, Jr., age two years, Barbara Cook Mead, an infant, who is a few months old, and Charles Shepard Lee, Jr., a minor. The interests of those who have only an expectancy in the property in question are always within the control of the legislature.

9, 10. Under the terms of the trust, no person has any vested interest in the *corpus* of the trust estate. The whole matter is contingent down to the moment when the trust ceases, and then for the first time can it be determined whether those who have the primary contingent remainder, or those who have the secondary contingent remainder will secure a vested interest in the property, or whether the heirs of the testator will inherit such expectancy. Such mere expectancies until they actually vest are subject to legislative control: *McNeer* v. *McNeer,* 142 Ill. 388 (32 N. E. 681, 19 L. R. A. 256, and note). The state may clothe the court will full power to inquire and adjudicate as to the status, title, and ownership of land, as respects the procedure provided and the constructive service of notice by publication upon nonresident defendants, unknown parties and unknown heirs, actions of this kind are to be classed with actions *in rem: Shepherd* v. *Ware,* 46 Minn. 174 (48 N. W. 773, 24 Am. St. Rep. 212); *Arndt* v. *Griggs,* 134 U. S. 322, 326 (33 L. Ed. 918, 10 Sup. Ct. Rep. 557); *Lane* v. *Innes,* 43 Minn. 137 (45 N. W. 4).

The decrees in both of these suits make careful provision for the best interests of the property of the trust estate, provide for safeguarding the interests of all persons therein in the future, and they should be affirmed. It is so ordered.          AFFIRMED.

McBRIDE, C. J., and BURNETT and JOHNS, JJ., concur.