Argued February 1, modified April 2, rehearing denied June 4, 1929.

## DORA JERMAN *v.* PAUL JERMAN.

(275 Pac. 915.)

For appellant there was a brief over the names of *Mr. Guy O. Smith* and *Mr. John H. Carson,* with an oral argument by *Mr. Smith.*

For respondent there was a brief over the names of *Mr. C. O. Fenlason* and *Mr. Harold B. Swasey,* with an oral argument by *Mr. Fenlason.*

BROWN, J.—The parties hereto were intermarried at Salem, Oregon, on November 18, 1911. To this union two daughters were born, of the ages of ten and twelve years respectively at the time the suit was instituted. Three previous separations are brought to light by the record, and on each of these occasions the defendant prevailed upon the plaintiff to go back to him and remain as his wife. The testimony indicates that the defendant indulged in intoxicating liquor,

and that when under its influence he accused his wife of infidelity, and struck her. The plaintiff testified that upon one occasion the defendant came home after midnight under the influence of liquor, and that she attempted to leave their bed, but that he detained her by force and violence, and left upon her body marks that were "black and blue"; that he called her "all the names he could lay his tongue·to"; that she was "everything but a woman. He said I was nothing but a son-of-a-bitch, and called me a chippy and a whore, and everything else. There wasn't anything that he couldn't say."

The plaintiff's father, who slept in an adjoining room, testified that upon that occasion he heard them fussing; that he had not yet gone to sleep when they started fussing, and "I heard him call her a dirty son-of-a-bitch and tell her to take her duds and get out."

Mrs. B. L. Nelson, called as a witness on behalf of the plaintiff, testified that on one occasion the defendant came home under the influence of liquor, and that during the course of a conversation which developed into a discussion between the plaintiff and defendant, the defendant slapped plaintiff, who, at that time, had her baby in her arms; that he struck her with such force that witness could see the imprint of his finger-marks, and that "her eye" was swollen on one side a little bit." Concerning his conduct on another occasion, this witness testified:

"He slapped her with his belt first, and she jumped up and he grabbed her by the arms, and she wanted to make him let loose. Of course, her strength couldn't compete with his and she bit him on the arm.

"Q. Then what did he do? A. He started to drag her over to the faucet, and I jumped up from the table and told him not to because she had been ill. * * She had had the measles."

She testified that at times the defendant was a light drinker, but that on other occasions he drank heavily of intoxicating liquor, and that when under its influence he was a man of moods.

■ The record is full of hints and insinuations that the plaintiff was not a woman of good morals. The defense says that she smokes, and succeeded in proving that upon one occasion she smoked a cigarette. He claims that she swears, and the sole proof offered was that she called her husband a "darned fool." It is likewise asserted that she drinks. In this regard, the testimony clearly shows that defendant often tried to persuade the plaintiff to take a drink of intoxicating liquor. Finally, as to the very serious accusation: There is an utter lack of proof in the record to justify the defendant's intimation that plaintiff was not loyal to her husband during the years of their married life. Suspicion is not proof.

■ While the policy of the law is to uphold and sustain the marriage relation, and while courts of equity will not lend aid to dissolve it in the absence of satisfactory proof of the charge preferred, yet it is likewise public policy, as expressed by our statute, to grant the dissolution of a marriage contract for the reasons therein assigned. Cruel and inhuman treatment, and personal indignities rendering life burdensome, constitute a statutory ground for divorce; and when that showing has been made by a petitioner for divorce, it is the duty of the court to dissolve the marriage: *White* v. *White,* 100 Or. 387, 403 (190 Pac. 969, 197 Pac. 1080); *Jenkins* v. *Jenkins,* 103 Or.

208, 219 (204 Pac. 165); *Carmichael* v. *Carmichael,* 106 Or. 198, 203 (211 Pac. 916).

■ The award of attorney's fees to plaintiff is assigned as error. This award was embodied in the final decree, and was proper. See *Billion* v. *Billion,* 122 Or. 68 (256 Pac. 389, 769).

4, 5. The defendant asserts that the trial court erred in awarding to the plaintiff an undivided one-third in fee of the real property described in plaintiff's complaint. Justification of this award is based upon the provisions of Section 511, Or. L., and paragraph 4 of the will of Isaac Durbin, the defendant's grandfather. Section 511 of our Code reads:

"Whenever a marriage shall be declared void or dissolved, the party at whose prayer such decree shall be made shall in all cases be entitled to the undivided third part in his or her individual right in fee of the whole of the real estate owned by the other at the time of such decree."

Paragraph 4 of the will is as follows:

"Fourth, to my daughter, Lela Jerman, and the heirs of her body only, and subject to the life estate therein of my wife, Olive Durbin, I hereby grant, will and devise the following described real premises, to wit (description of property same as described in complaint), the said lands and premises to be taken by my said daughter, Lela Jerman, after the death of my said wife, and to be held and enjoyed by her during the remainder of her natural life, and upon her death to descend to the heirs of her body only."

It will be observed that the testator did not name as his devisees his grandsons, Paul Jerman, the defendant herein, and Ed Jerman, his brother, but that he did devise the realty in question to "Lela Jerman and the heirs of her body only." This will was

drawn more than 22 years ago; and it was the intention of the testator to make the heirs of his daughter's body beneficiaries of his will, whether there descended from her body two heirs, or any greater or lesser number. As to what constitutes an heir, we take the following from Williams on Real Property (24 ed.), page 118:

"The heir is a person appointed by the law. He is called into existence by his ancestor's decease, for no man during his lifetime can have an heir. *Nemo est haeres viventis.* A man may have an heir apparent, or an heir presumptive, but until his decease he has no heir."

See, also, Co. Litt. 22b; 2 Bl. Com. 70, 107, 208; Broom, Max. 522.

The first life estate provided for by the will, that of Olive Durbin, the widow of testator, has been terminated by her death, but Lela Jerman, the daughter of testator, is living and is now in the possession and enjoyment of the property as a tenant for life. Until her death no one knows who will take under the will. Until that time it is uncertain whether the defendant, Paul Jerman, will be living when his mother dies. If he is then living he will, by virtue of his grandfather's will, acquire a fee-simple title to some part at least of the property; but if he is not living at that time, no title to the land can ever vest in him, for under the will, the title must vest in those who answer to the description "heirs of her body" at the time of her death, and, to answer that description, they must be living at that time. It is wholly possible that, at the time of the death of the mother Ed Jerman may be living, or, if not living, he may leave living descendants, and Paul Jerman and all of his descendants may be dead.

In that case, the whole property will pass under the will to Ed Jerman, if living, and, if not, to his children or grandchildren if he leaves any surviving him.

It is clear that Paul Jerman, during the lifetime of his mother, has no estate of inheritance in the land. An estate of inheritance is an estate which may descend to heirs: 1 Bouvier's Law Dictionary, p. 693; Washb. R. P. 51; 1 Steph. Com. 218. The most he can have while both he and his mother are living is a remainder which may ripen into a fee-simple title if he survives his mother; but, if he dies first leaving lineal descendants, his children, upon the death of his mother, would not inherit from him, but would take the property under the will.

It follows that Section 511 of our Code hereinabove set out has no application to the facts in this case, and therefore cannot be invoked as sustaining the property award to plaintiff in the court below.

See, also, *Schafer* v. *Schafer,* 122 Or. 620 (260 Pac. 206), where it is held that the words "in fee," as used in the statute, signify an estate of inheritance and that the title which is to be conveyed by the decree is a title in fee. The effect of that decision is that, unless the losing party in a divorce suit has title in fee to real property, the court is powerless to award an interest in real property to the party prevailing in the suit.

The decree of the lower court should be modified so as to eliminate the provision granting to the plaintiff a one-third interest in the real property described in the complaint. In all other respects the decision should stand.

It is so ordered.

MODIFIED. REHEARING DENIED.

BEAN, BELT and RAND, JJ., concur.