Argued June 27; reversed July 31, 1934

# HAWKINS & ROBERTS, INC., *v.* JERMAN

## (35 P. (2d) 248)

*Walter Fuhrer,* of Salem, for appellant.

*Custer E. Ross,* of Salem, for respondent.

RAND, C. J. This is a suit to determine adverse claims to real property of which Isaac Durbin died seized in 1913. He left a will, devising the property to his widow, Olive Durbin, for life and, upon the termination of that estate, the will expressly provided that the said lands and premises are "to be taken by my said daughter Lela Jerman after the death of my said wife and to be held and enjoyed by her during the remainder of her natural life, and upon her death, to descend to the heirs of her body only". The widow died and Lela Jerman, who is still alive, entered as a life tenant under the will and later sold and conveyed her interest therein and, by mesne conveyances, the same is now vested in the plaintiff.

Lela Jerman has two sons living, Edward D. Jerman and Paul Jerman. Edward D. Jerman has one son, Edward Jerman, Jr., who is a minor and under the age of 14 years. Paul Jerman has two children living and it is alleged in the complaint that Edward D. Jerman, the father of Edward Jerman, Jr., Paul Jerman and his two children have also conveyed their interest in the property and that the same is now vested in the plaintiff. There is no allegation in the complaint that Edward Jerman, Jr., the minor son of Edward D. Jerman, has ever conveyed or parted with his possibility of inheriting under the will of Isaac Durbin. There are but two defendants specifically named in the complaint and these are Lela Jerman and Edward Jerman, Jr., and, as to each of them, the prayer of the complaint is that plaintiff's title be

quieted and that plaintiff be decreed to be the owner in fee of the premises.

So far as the record shows, no person appeared as a defendant in the suit except Edward Jerman, Jr., and as to him the record shows that the attorney for plaintiff filed an affidavit stating that he was a minor and under the age of 14 years and had no guardian and moving that Walter Fuhrer, an attorney of this court, be appointed as guardian ad litem for said minor, and he was so appointed. He made no appearance in the case except to appear and demur to the complaint.

Upon the overruling of the demurrer, a decree was entered quieting plaintiff's title as against said minor and the other defendants in the suit and, from that decree, he only has appealed.

■ It is alleged in the complaint that plaintiff is the owner in fee of the premises. If this allegation stood alone and there were no other facts alleged, the truth of the fact of ownership would, for the purposes of the demurrer, be deemed to be admitted but where, as here, there are other facts alleged upon which such ownership depends and such facts so alleged in themselves show that the claim of ownership is unfounded, then the alleged ownership is not admitted by the demurrer. The question of ownership, therefore, so far as the rights of this defendant minor are concerned, is open for decision upon this appeal regardless of the fact that all the other defendants may have been satisfied with the decree.

It is very evident that the future estate and interest of this minor in the premises in controversy, if any such should arise, will flow from the will of Isaac Durbin and not through any inheritance from his father or his grandmother. Whether he will ever have any such interest or estate in the lands in controversy will

depend upon whom the lands will devolve at the time of Lela Jerman's death. Who such persons may be cannot now be ascertained and whether any of the parties named as defendants in this suit will be living at the time of her death or who of them will be so living is now unknown. It is entirely possible that Edward D. Jerman, the father of this minor, may be dead, and, in that event, if he has no living issue other than his present son, this defendant will take at least an undivided one-half interest in the fee, and, if by any contingency, Paul Jerman and the heirs of his body should also be dead, then this minor defendant would take all the fee if the intent of the will of Isaac Durbin is given the effect that he clearly intended it to have. In *Jerman v. Jerman,* 129 Or. 402, 407 (275 P. 915), this court said:

"The first life estate provided for by the will, that of Olive Durbin, the widow of testator, has been terminated by her death, but Lela Jerman, the daughter of testator, is living and is now in the possession and enjoyment of the property as a tenant for life. Until her death no one knows who will take under the will. Until that time it is uncertain whether the defendant, Paul Jerman, will be living when his mother dies. If he is then living he will, by virtue of his grandfather's will, acquire a fee simple title to some part at least of the property; but if he is not living at that time, no title to the land can ever vest in him, for under the will, the title must vest in those who answer to the description 'heirs of her body' at the time of her death, and, to answer that description, they must be living at that time. It is wholly possible that, at the time of the death of the mother Ed Jerman may be living, or, if not living, he may leave living descendants, and Paul Jerman and all of his descendants may be dead. In that case, the whole property will pass under the will to Ed Jerman, if living, and, if not, to his children or grandchildren if he leaves any surviving him.

"It is clear that Paul Jerman, during the lifetime of his mother, has no estate of inheritance in the land.

An estate of inheritance is an estate which may descend to heirs: 1 Bouvier's Law Dictionary, p. 693; Washb. R. P. 51; 1 Steph. Com. 218. The most he can have while both he and his mother are living is a remainder which may ripen into a fee simple title if he survives his mother; but, if he dies first leaving lineal descendants, his children, upon the death of his mother, would not inherit from him, but would take the property under the will."

The plaintiff contends, however, that all the estates of remainder created by the will of Isaac Durbin in the heirs of the body of Lela Jerman, his daughter, are defeated by her conveyance of the life estate and those of Edward D. and Paul Jerman, her sons, to plaintiff and that, by these conveyances, the greater and lesser estates having been merged in the plaintiff, all such contingent remainders have been defeated.

■■ Estates tail, as known at common law, have been abolished in this state: *Rowland v. Warren,* 10 Or. 129; *Lytle v. Hulen,* 128 Or. 483 (275 P. 45). The rule in Shelly's Case that "when the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited, either immediately or mediately, to his heirs in fee or in tail, the word *heirs* is one of limitation of the estate, and not of purchase, and the estate of inheritance vests immediately in the ancestor" (1 Coke 104; 3 Cru. Dig. 325; *Dennett v. Dennett,* 40 N. H. 498), so far as applying to a devise has been abrogated by section 10-526, Oregon Code 1930, which provides:

"If any person by last will devise any real estate to any person for the term of such person's life, and after his death, to his or her children or heirs, or right heirs in fee, such devise shall vest an estate for life only in such devisee, and remainder in fee simple in such children."

■■ The will of Isaac Durbin must, therefore, be construed without regard to the construction that would be given to it if estates in fee tail existed in his state or the rule in Shelly's Case was in force as to wills. By the terms of the will, upon the death of Lela Jerman, the property is "to descend to the heirs of her body only". As pointed out in the Dennett case, the course of descent is controlled by the statutes and cannot be changed by the private will of any testator and, therefore, the word "descend" cannot be given its correct technical meaning but must be understood as expressing the intention of the testator that the property shall pass, after her decease, to the heirs of her body as it would in the case of a descent. Under the will, the persons who are to take the property upon the termination of the daughter's life estate are the heirs of her body only. By the very nature of things, this description cannot be applied until the very moment of her death, for until that time the persons who are to take under the will cannot be ascertained. The interests, therefore, of the issue of her body now living are contingent upon their survival of the life tenant.

"* * * It is well settled, where the devise is to all persons of a specified class, they take a vested interest while, if it is to specified persons of a class, the interest is contingent, dependent upon whether at the termination of the life estate there are persons of that class answering the description." Birdsall v. Birdsall, 157 Iowa 363 (132 N. W. 809, 36 L. R. A. (N. S.) 1121), and cases cited.

■ A remainder which is certain as to the owner and absolute as to his estate or interest is a vested remainder but a remainder may be limited to a person not yet ascertained or to a certain person upon a condition precedent which may not happen until after the deter-

mination of the particular estate, and while such uncertainty lasts as to the person or the interest, it is described as a contingent remainder which becomes changed into a vested remainder by the owner becoming certain or the condition happening during the continuance of the particular estate: Leake's Law of Property in Land, 1909 Ed., p. 233.

In the instant case, the contingency is not only as to the persons who are to take under the will but also as to the extent of the interest of such takers. That Lela Jerman will die some time is certain but what heirs of her body will then be alive to take the property is uncertain and incapable of ascertainment until the very moment of her death. It is also uncertain whether either of her two sons will then be living and the same uncertainty exists as to the children of the sons. They may all or none of them survive the life tenant.

A vested remainder has always been held to be alienable and may be conveyed or devised as any other vested estate in real property. Under the early common law rules, a contingent remainder could not become the subject of alienation because it was regarded as a possibility rather than an estate in the land. It is held to be analogous to the possibility of an heir at law having an estate when his ancestor shall have died: 2 Washburn on Real Property (5th Ed.), section 237; 3 Williams on Real Property, 232. But as said by Washburn:

"It is now settled that where the contingency upon which the remainder is to vest is not in respect to the person but the event, where the person is ascertained who is to take if the event happens, the remainder may be granted or devised and the grantee or devisee will come into the place of the grantor or devisor with his chance of having the estate. But if the contingency is in the person who is to take, as where the remainder

is limited to the heirs of one now alive, there is no one who can make an effectual grant or devise of the remainder."

In defining remainders, Mr. Washburn says "that a remainderman always takes by purchase, and never by descent": 2 Washburn on Real Property, section 223. To the same effect see *Dennett v. Dennett, supra.*

"The word purchase (perquisitio) is applied in law to any lawful mode of acquiring property by the person's own act or agreement, as distinguished from acquisition by act of law, as descent, escheat and the like. A purchase in the above sense includes acquisition not only under a contract of sale for a valuable consideration, but also by gift or without consideration, and by devise." Leake's Law of Property in Land, p. 117.

■ The contention of plaintiff that the particular estate, that is to say, the life estate of Lela Jerman, was terminated by her deed to plaintiff's grantor and that this had the effect of destroying the contingent remainders which would have become vested upon her death had she continued in the possession and enjoyment of her life estate, is best answered by the holding in the Dennett case. In that case the court said:

"But it is also contended, that if Mark Dennett took but an estate for life, still the remainder to the youngest son was contingent, and was barred by the destruction of the tenancy for life before the contingency happened, by the deed of Mark to Wendell. We have stated that we regard this as a contingent remainder, and by the destruction of the life estate, on which such a remainder depends, it is clear the remainder is destroyed. 4 Kent Com. 235, 248, 253. Such remainders will be destroyed by a feoffment or fine. But it is settled that conveyances which derive their operation from the statute of uses, as a bargain and sale, lease and release, and the like, do not bar contingent remainders, for none of them

pass any greater estate than the grantor may lawfully convey. 4 Kent Com. 255. The deed in common use here is a deed of bargain and sale. The deed of Mark to Wendell purports to be nothing more. And though it is held that to prevent a deed from failing of any effect, it may be regarded as a feoffment, yet it will not have that effect given it, to affect the estate of a. third person. By such a deed nothing more is conveyed by a tenant for life than he may rightfully convey; that is, his own interest alone; and any contingent remainder remains unaffected by it.''

Whether the statute of uses (27 Hen. VIII, c. 10) is a part of the common law of this state is a question not heretofore decided so far as our investigation goes. It was referred to in *Lambert v. Smith,* 9 Or. 185, and some application was made of it. If it is in force, it is decisive upon the question of what estate or interest was passed by the deed of the life tenant to plaintiff's grantor, namely, the estate then owned by her. But if not in force here, then the same result follows from the statute, sections 63-105 and 63-106, which reads as follows:

''The term 'heirs', or other words of inheritance, shall not be necessary to create or convey an estate in fee simple; and any conveyance of any real estate hereafter executed shall pass all the estate of the grantor, unless the intent to pass a less estate shall appear by express terms, or be necessarily implied in the terms of the grant.

''A conveyance made by a tenant for life or years, purporting to grant a greater estate than he possessed or could lawfully convey, shall not work a forfeiture of his estate, but shall pass to the grantee all the estate which such tenant could lawfully convey.''

 That the interest of a life tenant may be conveyed by deed is clear both under the statute and at common law, but that she can only sell the interest

which she holds in the property is also clear. When Lela Jerman conveyed this property to plaintiff's grantor, she passed and could pass no greater interest in the property than she herself possessed and that was an estate for life. Her grantee can hold the property during the remainder of her life and the interests granted by her will cease upon the termination of her estate, that is to say, upon her death. The right of a life-tenant to convey his life estate in the absence of a restraint imposed by the instrument creating the estate has never been doubted. See note Ann. Cas. 1917A, 579, and cases cited. In the same note, it is said:

"A conveyance by a life tenant, purporting to pass the fee though ineffectual as to the remainder, operates as a conveyance of the life estate."

A contingent remainder not being regarded at common law as an estate but merely a possibility coupled with an interest is consequently not capable of direct transfer *inter vivos*. "A contingent remainder may, however, even at common law, be released to the owner of the estate in possession. Also it may pass by way of estoppel, and an assignment of such an interest for a good or valuable consideration is recognized and enforced in equity.": 1 Tiffany on Real Property, section 129. It is a rule of law that, when a greater estate and a less coincide and meet in one and the same person, the less is immediately merged in the greater: 23 R. C. L. 108. This rule has particular application where both the reversion in fee and the particular estate are vested in one person who is the residuary devisee. So long as both reversion and particular estate are vested in the residuary devisee, no merger occurs for where the particular estate and inheritance are both limited to the same person by the instrument

creating the intervening contingent remainder, the estates do not merge: *Bowle's Case,* 11 Coke 79b, 80a; Fearne, C. R. 341-345; Challis, Real Prop. 137, 138. But as soon as they are transferred to a third person, the general principle of merger, where a greater and less estate meet in the same person without any intervening estate, the greater shall drown the lesser, operates, and the particular estate becomes merged in the fee: 1 Tiffany, Real Propery, section 123; Fearne, C. R. 346. This rule, however, can have no application here because there has been no merger of both the inheritance and of the particular estate.

In *Scott v. Fairlie,* 81 Fla. 438 (89 So. 128), the court said:

"* * * whether the estate in remainder was vested or contingent, a conveyance by the life tenant passed only the life estate, and did not operate to destroy the estate in remainder."

In *re Washburn's Estate,* 11 Cal. App. 735 (106 P. 415), the court said:

"The definition of a merger precludes the possibility of its happening where a life estate and a contingent estate only are united. The whole title, legal as well as equitable, must unite in one and the same person."

In *Brownback v. Keister,* 220 Ill. 544 (77 N. E. 75), the court said:

"It is insisted, however, that inasmuch as appellant has, by mesne and direct conveyances, obtained the interest of Matilda Keister (the life tenant) and the interest of the six grandchildren of the testator in the land, the particular estate has been merged in the fee and has become extinct. The interest which appellant acquired from the grandchildren was only such interest as they had at the time they executed deeds of conveyance. That interest was a contingent remainder.

'In order to effect a merger there must be at least two estates in the same property which have vested in the same person.' (Case cited). The remainder has not vested in the appellant, therefore there has been no merger.''

■ It is clear from the allegations of this complaint that the reversion and the particular estate have not been merged. It is equally clear that since the possibility exists that Edward Jerman, Jr., taking some part of the fee under the will of Isaac Durbin, should Edward Jerman, Jr., survive his father, it was error for the court to overrule the demurrer as to said minor and to enter any decree quieting the title as to him.

The decree, therefore, is reversed in so far as it affects any of the rights of Edward Jerman, Jr.

KELLY, J., concurs in the result.