Argued and submitted June 27, 1983, reversed and remanded March 21, reconsideration denied May 18, petition for review denied August 8, 1984 (297 Or 547)

SOLA et al,
*Respondents,*

*v.*

CLOSTERMANN et al,
*Appellants.*

(A8101-00202; CA A25060)

679 P2d 317

James M. Callahan, Portland, argued the cause for appellant Clostermann. With him on the briefs was Landis, Aebi & Bailey, P.C., Portland.

J. P. Graff, Portland, argued the cause for appellants Boothe, and Black, Kendall, Tremaine, Boothe & Higgins. With him on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Jeffrey L. Kleinman and Bert E. Joachims, Portland, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

In this legal malpractice claim, the amended complaint alleges that defendants, attorneys at law, were negligent when they represented plaintiffs in a previous lawsuit by failing to file a timely notice of appeal. As in all legal malpractice cases, we are involved with a lawsuit within a lawsuit. To prevail on the present claim, plaintiffs must show that they would have won on the appeal of the previous case, which is a question of law. Thus, we are in substantially the same position we would have been in reviewing the judgment in the first case had defendants filed a timely appeal for plaintiffs. *See Harding v. Bell,* 265 Or 202, 208, 508 P2d 216 (1973). In the first case, Judge Dale ruled against plaintiffs. Judge Kalberer, the trial judge below, ruled that Judge Dale was wrong and granted plaintiffs' motion for partial summary judgment. He concluded that, had the appeal been timely, plaintiffs would have prevailed and obtained a reversal. We conclude that Judge Dale was correct and that we would have affirmed his judgment had the first appeal been timely. Thus, we reverse.

Defendants represented plaintiffs in a declaratory judgment proceeding brought by the Bank of California (Bank), as trustee, to determine who was the contingent remainder beneficiary under the trust of Kenneth D. Hauser, Sr. (Senior), who established an irrevocable trust in December, 1955. Under the terms of the trust, Kenneth D. Hauser, Jr. (Junior) was the life beneficiary. On Junior's death, if he had "children" surviving him, the trustee was to distribute the trust estate to Junior's "children." However, if Junior died without "issue," then the trustee was to distribute the trust estate to Junior's two sisters or their surviving issue. Plaintiffs are Junior's surviving sister and the children of his deceased sister.

Although the trust was funded by Senior and Junior in 1955, most of the trust assets, approximately $260,000, were received from Senior's estate following his death in 1966. Under Senior's 1964 will, one-third of his net estate poured over to the trust. The remaining two-thirds were distributed outright to Junior's two sisters. Junior died in 1976. Shortly before he died, he instructed his attorney to inform the trustee

that he was the father of Kenneth D. Mackey (Mackey), who was born out of wedlock in 1957.[1] He had no other children.

Following Junior's death, the Bank sought a declaratory judgment to determine whether Mackey or plaintiffs were the remainder beneficiaries under the trust agreement. Defendants represented plaintiffs in that proceeding. There were two issues: (1) Was Mackey the son of Junior; and (2) if so, did the words "children" and "issue," as used in the trust agreement, include or exclude a child born out of wedlock?[2] Judge Dale held in that case that Mackey was Junior's son and that he was entitled to take under the trust agreement.

Defendants filed a notice of appeal on behalf of plaintiffs within 30 days of the denial of their motion for a new trial but more than 30 days after the decree was entered. This court, citing *Radmacher v. Archuleta,* 285 Or 433, 591 P2d 744 (1978), dismissed the appeal, and the Supreme Court denied review. 288 Or at 253.

Plaintiffs then commenced this action against defendants and the Bank.[3] The third count of the amended complaint, which is the focus on this appeal, alleged that defendants were negligent in failing to file a timely appeal. Plaintiffs requested partial summary judgment on the issue whether their appeal would have been successful. The trial court granted plaintiffs' motion. Pursuant to ORCP 67B, the trial court entered a judgment, from which defendants now appeal.[4]

If the appeal in the previous declaratory judgment proceeding would not have been successful even if it had been timely filed, defendants' malpractice caused plaintiffs no

---

[1] Mackey's birth certificate lists Junior as his father. Originally, Mackey's name was Kenneth D. Hauser, III, but it was changed in 1968.

[2] Both parties use the term "illegitimate." Children are neither legitimate nor illegitimate, but are only children. Our statutes neither use nor define the term "illegitimate." Instead, ORS 109.124(2) defines the term "child born out of wedlock," and we will use that phrase.

[3] The Bank has been dismissed as a defendant and is not a party in this appeal.

[4] In its judgment, the trial court expressly determined that a final judgment should be entered to expedite the proceedings and to minimize the prejudice to all parties. The court also expressly determined that there was no just reason for delay. The judgment met the requirements of ORCP 67B and was appealable. ORS 19.010(2)(e).

damage. Without this essential element, plaintiffs' claim would fail. Whether that appeal would have been successful is a question of law. *Chocktoot v. Smith,* 280 Or 567, 573, 571 P2d 1255 (1977); *Bock v. Zittenfield,* 66 Or App 97, 99, 672 P2d 1237 (1983).

If Senior, as settlor under the trust, had expressed his intent either to include or exclude a child born out of wedlock, then that intent would control. *Williams v. Morris,* 144 Or 620, 625, 25 P2d 135 (1933). However, as both trial courts that reviewed the trust agreement properly concluded, it simply is not possible to ascertain Senior's intent from a reading of the document. Similarly, we find no convincing evidence extrinsic to the document to help us in ascertaining Senior's intent.[5]

We still must decide whether Judge Dale was correct when he ruled that Mackey takes under the trust. Although both parties agree that there are no Oregon cases on point, both urge this court to adopt a "policy" favoring their respective positions. Plaintiffs argue that in 1955 there was a common-law presumption that, absent evidence to the contrary, a child born out of wedlock was not included in the definitions of either "children" or "issue."[6] This was the argument accepted by Judge Kalberer. On the other hand, defendants argue that the common-law presumption was changing in 1955 and, thus, this court need not adopt a policy limiting the rights of children born out of wedlock, especially when that position was rejected by the 1957 Oregon Legislature.[7]

We are unable to accept either policy argument. Instead, we will apply the law in 1976, when the class closed with Junior's death. Interests of a contingent remainder beneficiary do not vest until the death of the life beneficiary. *Jerman v. Jerman,* 129 Or 402, 407, 275 P 915 (1929); *Lee v.*

---

[5] There is some evidence that Senior knew that Junior had fathered Mackey before signing the 1964 Will. However, such a fact is insufficient evidence that Senior intended to include Mackey. There is no evidence that Senior *ever* considered this question. We refuse to pretend to read Senior's mind posthumously.

[6] Additionally, our statutes at that time limited the intestate share that a child born out of wedlock could take. *See* former ORS 111.010(1) (*repealed by* Or Laws 1969, ch 591, § 305), former ORS 111.220 and 111.240 (*repealed by* Or Laws 1957, ch 411, § 7).

[7] *See* Or Laws 1957, ch 411.

*Albro,* 91 Or 211, 226, 178 P 784 (1919). It was only when Junior died that it was necessary and possible to determine who was the remainder beneficiary. Other courts, in similar situations, also have applied the law as of when the class closed. *See Lewis v. Green,* 389 So2d 235 (Fla App 1980) *rev den* 397 So2d 778 (Fla 1981) (law at time of termination of prior life estate rather than law at time document written controls); *Haskell v. Wilmington Trust Company,* 304 A2d 53 (Del 1973) (trustor presumed to realize law could change and therefore, without an intent to the contrary, law in effect when beneficiaries determined controls).

In *Will of Hoffman,* 53 AD2d 55, 385 NYS2d 49 (1976), the court interpreted the term "issue" in a 1951 testamentary trust to include children born out of wedlock, because there was no express intent to exclude such children. There, the testamentary trust provided that, when a life beneficiary died, the remaining trust income was to be paid to that person's "issue." That court recognized that there was a presumption that "issue" only included lawful issue. Nevertheless, the court ruled:

> "Because of changes in societal attitudes and recent developments in constitutional law, we are of the opinion that, to the extent that precedents require this burden to be placed on illegitimate claimants under a will, the law is not only outmoded, but discriminatory, and should be rejected." 385 NYS2d at 50.

The court held that "issue" should be construed to include *all* descendants, without an express qualification by the testatrix. Although none of the cited cases is binding on us, we find them persuasive.

Plaintiffs conceded at oral argument that, if the 1976 law were applied, they would probably lose. By 1976, statutes were in effect which protected children born out of wedlock: ORS 109.060; 109.090; 112.105 and 112.195. ORS 109.060, adopted in 1957, provides that "[t]he legal status and legal relationships * * * between a person and his parents * * * are the same for all persons, whether or not the parents have been married." ORS 109.090, also adopted in 1957, provides that ORS 109.060 applies to *all* persons, regardless of their birth dates, and requires that ORS 109.060 be applied liberally to achieve its purpose. ORS 112.105, adopted in 1969, requires

that children born out of wedlock take for purposes of intestate succession, as would children born in wedlock. Finally, ORS 112.195, also adopted in 1969, provides, *inter alia,* that references in a trust to individuals or members of a class described generically as children include any person who would be so treated for purposes of intestate succession.

Reading these statutes together, we conclude that Mackey must be treated like any other child of Junior's and that, because Mackey is Junior's child for purposes of intestate succession, he is also entitled to be treated as Junior's child for purposes of Senior's trust. Because we conclude that any appeal from the ruling that Mackey was entitled to take under the trust would have been unsuccessful, plaintiffs have sustained no damages by virtue of defendants' negligence. The summary judgment was improperly granted.

Reversed and remanded.